J-S12031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
           :   PENNSYLVANIA
           :
    v.        :
           :
           :
PRESTON LE       :
           :
    Appellant   :  No. 2605 EDA 2025
           :

Appeal from the Judgment of Sentence Entered June 26, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003571-2024

BEFORE:  McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:   **FILED AUGUST 10, 2026**

 Appellant, Preston Le, appeals from the judgment of sentence imposed by the Court of Common Pleas of Montgomery County following jury convictions for possession of a controlled substance with intent to deliver, criminal use of a communication facility, and corruption of minors.[1] In his lone claim presented, Appellant intermixes sufficiency argument with what he explicitly calls a challenge to the weight of the evidence. Neither claim is properly preserved for substantive review. We therefore affirm.

 The trial court accurately summarized the trial evidence:

> The two-day jury trial began on January 30, 2025, and established the following facts. J.R. testified that she knew Appellant from

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S § 7512(a) and 18 Pa.C.S. § 6301(a)(1)(i), respectively.

school and they were in English class together. (N.T., Trial by Jury, V. 1, 1/30/25, p. 27). She didn't remember what prompted her to get his phone number, but he gave her his phone number the day before she bought the acid tabs, May 10, 2024. *Id.* at 28, 29. They started talking and acid was brought up; they started talking about prices. *Id.* at 28. J.R. testified that she always spoke to Appellant on the phone number he gave her. *Id.* at 29-30. She never texted or called Appellant on any other number. *Id.*

The following day, they planned it out so that J.R. could buy drugs from Appellant. *Id.* Her plan was that she would buy the acid and then go to the carnival that evening. *Id.* at 28. Her agreement with Appellant was that he would drop off the acid. *Id.* at 30. Their conversation as to how he would drop it off was over text [messages]. *Id.* at 30; Exhibit C-1. J.R. texted with Appellant at [a specific phone number]. *Id.* at 31. The Commonwealth introduced the texts between J.R. and Appellant's phone, discussing what he would be selling her, and pictures of the acid tabs. *Id.* at 33-35. The messages began on Thursday, May 9th. *Id.* at 35. They discussed specifics of how he would bring the acid to J.R. She was concerned how he would get it to her because there were three dogs and a camera outside her house. *Id.* at 36-36. There were several more texts between them about arranging the sale of the acid. *Id.* at 37.

The next set of messages took place on May 10th, a Friday. *Id.* at 37. J.R. didn't want Appellant to deliver the acid to her house because she was worried the house had cameras. *Id.* at 42. The plan they were arranging was that she would put the money under a black bag. Appellant would put the acid there, and she would get it later. *Id.* at 42-43, 44. Appellant called her because one of the neighbors was out and he didn't want to put the acid under the bag. *Id.* at 44. Appellant pulled away from that area and pulled up in front of her house. *Id.* J.R. went outside to retrieve the acid, right in front of the cameras. *Id.* She was "freaked out." *Id.*

Appellant texted her later around 5:04 p.m. The text read, ["]Calm down.["] *Id.* at 45. J.R. had taken two acid tabs and was "tripping out" by 9:50 p.m. *Id.* at 47. The last thing she remembered was talking to a friend. *Id.* After that[,] she woke up in the hospital strapped down because she was hurting herself. *Id.*

The day after she came home from the hospital she spoke to law enforcement at her house. *Id.* at 48. She was interviewed and showed the detective the messages on her phone. *Id.* The phone was taken for evidence. *Id.* The police showed her a photograph of Appellant, and she identified him as Preston Le. *Id.* at 48-49. She wrote on the photograph, ["]This is Preston Le, who sold me the acid. J.R.["] *Id.* at 49.

J.R.'s mother, [G.R.] testified. *Id.* at 56. [She] explained that[,] around 12:15 a.m., she received a notification on her Ring camera that alerted her that the front door opened. *Id.* at 58. She looked at the camera footage and observed her daughter out front, and she was naked. *Id.* She had no idea what was going on. *Id.* at 57 - 58. [G.R.'s] husband went outside with a blanket to get J.R. to come inside. *Id.* at 58. J.R. was out of control and screaming. *Id.* Ultimately someone called 9-1-1, and J.R. was transported to the hospital. *Id.* at 59.

After J.R. was taken to the hospital, [G.R.] had possession of her phone. *Id.* at 60. She looked through the phone and saw the conversation that J.R. had with Appellant. *Id.* [G.R.] looked at the Ring camera footage from earlier and started putting together what had happened. *Id.*

Officer James Baldwin of the Upper Moreland Township Police Department was dispatched to the family home at 201 Castello Avenue in Hatboro. *Id.* at 65. J.R.'s brother showed the officer the text messages on J.R.'s phone. *Id.* at 67. Officer Baldwin noted that the text messages were with the phone number [identified by J.R. as being Appellant's]. *Id.* at 68. When the number was run, it was connected to [D.C.]. *Id.* at 70. He did not follow up with this individual. *Id.*

Detective Sergeant Todd Smith of the Upper Moreland Township Police Department[] conducted an investigation in this matter on Monday, May 13th. *Id.* at 73. Detective Smith spoke to J.R., and she told him that Preston sold her the acid, and through a school application, she was able to confirm to the detective that Preston's last name was Le. *Id.* at 76. The detective showed J.R. a photograph of Appellant, and J.R. identified that photograph as Preston Le. *Id.* The detective also reviewed the text messages between J.R. and the phone number associated with Appellant. *Id.* at 78. Detective Smith attempted to set up a drug buy of LSD using that phone number. *Id.* He was never able to initiate a meeting. *Id.* at 79. Based on the information the detective had,

he applied for an arrest warrant of Appellant, and [Appellant] was taken into custody at his residence on Fitzwatertown Road in Willow Grove. *Id.* at 84-86.

Detective Smith also obtained search warrants for a white Infiniti SUV, which was registered to Appellant's mother and for his residence. *Id.* at 87, 88. The search of the vehicle produced no evidence. *Id.* at 91. The search of the residence located three cell phones, two in the bedroom associated with Appellant, and one outside his bedroom. *Id.* at 92. Also, items consistent with the sale of drugs were found in Appellant's bedroom. *Id.* at 93-94. Detective Smith was ultimately unable to determine to whom any of the cell phones belonged or what phone numbers were associated with them because they were powered off. A download of the phones was not possible. *Id.* at 100, 101. Additionally, upon entry of the home, the detective called the [the specific phone number identified by J.R.], but it went right to voicemail, indicating it was powered off. *Id.* at 100-101.

Further, Detective Smith reviewed the video clips from the Ring doorbell camera. *Id.* at 102. He testified that the timing of the texts matched up to what he saw on the video. *Id.* at 103-107.

After the Commonwealth rested, Appellant testified on his own behalf. *Id.* at 119. Appellant denied knowing J.R. *Id.* at 120. He also denied any association with the [specific phone number identified by J.R.], selling drugs, or selling drugs to J.R. *Id.*

The defense also called Appellant's mother [] as a character witness. *Id.* at 122.

The second day of trial, the Commonwealth and defense counsel presented their closing arguments. (N.T., Trial by Jury, V. 2, 1/31/25, pp. 6-25). At the conclusion of deliberations, the jury found Appellant guilty of possession with intent to deliver, criminal use of communication facility, and corruption of minors. *Id.* at 53-54.

Trial Court Opinion, 10/24/25, 2-5.

On June 26, 2025, the court imposed concurrent terms of five to twenty-three months' imprisonment and five years' probation. N.T. Sentencing, 6/26/25, 30. On July 1, 2025, Appellant filed a post-sentence motion for a

"judgment of acquittal" in which he asserted that "the verdict went against the weight of the evidence," citing Pa.R.Crim.P. 607(A)(3), and that the sentencing court abused its discretion. Post-Sentence Motion for Judgment of Acquittal, 7/1/25, ¶¶ 6-7. The trial court denied the post-sentence motion without explanation on July 16, 2025. *See* Order, 7/16/25. Appellant filed a timely notice of appeal. *See* Notice of Appeal, 8/13/25. The trial court ordered a concise "statement of the errors complained of on appeal." *See* Pa.R.A.P. 1925(b); Order, 8/14/25. Appellant complied and in his Rule 1925(b) Statement, asserted that "the verdict was against the weight of the evidence" because the Commonwealth did not "definitively link[… Appellant] to the crime." Concise Statement of Errors Complained of on Appeal, 9/11/25.

In his brief, Appellant presents the following question for review:

Was the verdict against the weight of the evidence in light of the Commonwealth's failure to obtain subscriber information for [the specific number referenced by J.R.] that definitely linked defendant to the crime and the Commonwealth's inability to definitely establish that the white car on the Ring Camera Video was defendant's mother's car?

Appellant's Brief, 3.

Appellant explicitly sets forward the standard of review for a weight of the evidence claim. *See* Appellant's Brief, 9 (citing *Commonwealth v. Hawkins*, 701 A.2d 492, 500 (Pa. 1997)). He then recounts the holdings in two cases that addressed sufficiency claims, rather than weight of the evidence claims. *See id.*, 9-10 (citing and discussing *In re J.B.*, 189 A.3d 390 (Pa. 2018) and *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993)).

Taken together, the two cases relied upon by Appellant stand for the proposition that the record taken as a whole may be insufficient as a matter of law where it is "equally consistent with a defendant's innocence as it is with his guilt," *J.B.*, 189 A.3d at 415, or is "riddled with critical inconsistencies," *Karkaria*, 625 A.2d at 1171. Yet, he concludes that the "verdict … must be reversed as it shocks the conscience," which is the standard for a post-trial challenge to the weight of the evidence, and requests relief in the form of "an arrest of judgment," which is the relief appropriate for insufficient evidence. Appellant's Brief, 11-12. Accordingly, we must first determine which, if either, claim Appellant has properly put before this Court.

As our Supreme Court has explained:

> … we find it necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted). The two claims are reviewed under different standards, and must be argued under the separate and distinct standards, because they are contradictory to each other in that a "motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Id.* at 751-752. Appellant's filings have conflated these two distinct claims.

- 6 -

In his post-sentence motion, Appellant conflated his challenge to the weight of the evidence with a challenge to its sufficiency by seeking a judgment of acquittal, rather than a new trial. **See** Post-Sentence Motion for Judgment of Acquittal, 7/1/25, ¶ 6; **see also Widmer**, 744 A.2d at 751-752 (meritorious sufficiency claim results in an arrest of judgment, while a meritorious weight claim results in a new trial). Yet, Appellant specifically asserted that a judgment of acquittal should have been granted because "the verdict went against the weight of the evidence." Post-Sentence Motion for Judgment of Acquittal, 7/1/25, ¶ 6. Notably, we cannot glean any further information to identify the true nature of Appellant's post-sentence claim, because he did not include any argument. **See id.** In his Rule 1925(b) statement and again in his brief as the question involved on appeal, Appellant more clearly asserts just a weight claim. **See** Appellant's Rule 1925(b) Statement; Appellant's Brief, 3.

The trial court noted the confusion and wrote that:

Although styled as a weight claim, the substance of this appellate issue does not go to the credibility of the evidence and is not in fact a weight claim. **See[] Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa. Super. 1997) (credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence). Rather, the substance of this claim[] goes to whether the evidence was sufficient to establish Appellant's identity because as he argues the phone number cannot be definitively linked to him and the white car cannot be definitively linked to him.

Trial Court Opinion, 6. The trial court therefore analyzed the issue as a sufficiency claim and found the evidence to be sufficient. *See id.*, 6-9.[2]

In his brief, Appellant only argued that the evidence was insufficient and did not contend that the his conviction was contrary to the weight of the evidence. Appellant thereby waived any weight claim that may have been preserved in his post-sentence motion because he presents no meaningful argument in support of it on appeal. *See Commonwealth v. Sexton,* 222 A.3d 405, 416 (Pa. Super. 2019) (finding a challenge to the weight of the evidence unreviewable "in relying upon his argument in support of his sufficiency challenge, Appellant conflates weight and sufficiency claims and has essentially failed to develop a challenge to the weight of the evidence"); *Commonwealth v. Hartzell*, 988 A.2d 141, 145 (Pa. Super. 2009) (finding two appellate issues waived where the appellant "provided only one short paragraph in support of each […], neither of which contains any citation to authority"); *Commonwealth v. Bobin*, 916 A.2d 1164, 1168 (Pa. Super. 2007) (finding arguments waived on appeal when "amounting to less than one

_____

[2] We have reviewed the record and determined that the trial court's conclusion is correct. Appellant's sufficiency claim fails because he does not address, let alone evaluate, the testimony of J.R. She knew Appellant from high school and described him as a friend. *See* N.T. Trial, 1/30/25, 26-28. She obtained the phone number from Appellant in class the day before the transaction and negotiated the transaction for acid tabs by text exchanges to that number. *See id.*, 28. She arranged for Appellant to deliver the acid tabs to her home. *See id.*, 30-44. They then conducted a face-to-face exchange at his car, which was captured by security video. *See id.*, 44-45. Thus, J.R. knew Appellant and identified him as the person who sold her the acid tabs. *See id.*, 27-28, 44-45.

half page and containing no analysis or case citation"). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." ***Commonwealth v. Sanford***, 445 A.2d 149, 150-151 (Pa. Super. 1982) (citations omitted). Accordingly, where an appellant fails to provide any discussion of an issue on appeal, or case law supporting a right to relief, this Court will not address the issue on appeal. ***See id.***

Although Appellant argues a sufficiency claim in his brief, that claim also is waived and unreviewable. He asserts only a single question for our review, and that question unequivocally forwards a challenge to the weight of the evidence and not one directed at its sufficiency. "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a); ***see Commonwealth v. Einhorn,*** 911 A.2d 960, 969 n.2 (Pa. Super. 2006) ("Because [appellant's double jeopardy] claim was not included in his statement of questions in his brief, we are constrained to find it waived"). Rule 2116 "requires that the issues to be resolved must be included in the statement of questions involved." ***Commonwealth v. Harris***, 979 A.2d 387, 397 (Pa. Super. 2009). As explained above, sufficiency and weight claims are distinct, raising one does not raise the other. ***See Widmer***, 744 A.2d at 751. Here, Appellant arguably asserted a conflated claim of weight and sufficiency in his post-sentence motion and presented only a sufficiency argument in his brief but failed to include any sufficiency claim in his questions presented. As a result, the only

argument that he presents in his brief is unreviewable in this appeal. ***See Commonwealth v. Kittelberger***, 616 A.2d 1, 3 n.5 (Pa. Super. 1992) (holding that sufficiency claim was not preserved for review, even though raised in "post-trial motions and in the argument portion of [the] brief, … because appellant failed to … includ[e] it in his statement of questions").

Accordingly, neither of the conflated claims Appellant asserted in his post-sentence motion are preserved for appeal. He did not present any argument in support of the weight claim he asserted in his question presented on appeal. He did not include in his question presented the sufficiency claim he argued in the brief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/10/2026